Vergiette v. Samara                    CV-93-529-B    02/15/95
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE

Francois Vergiette

     v.                                        Civil No. 93-529-B

Rijk Pieter Schoonheim Samara

                          **O R D E R**

     Francois Vergiette obtained a default judgment on a breach
of contract claim against Rijk Samara from the District Court of
the Hague, Netherlands.  The judgment obligated Samara to pay
Vergiette 90,000 Dutch guilders, plus interest and costs, and
supply Vergiette with information concerning certain assets
within eight days of being served with the judgment.  The
judgment also specified that Samara would be liable for a 5,000
guilder per day penalty for each day he failed to produce the
information required by the judgment.  Prior to filing suit in
this court, Vergiette recovered the 90,000 guilders Samara owed
pursuant to the judgment.  Samara, however, never produced the
information required by the judgment.  Nor did he pay the
interest and costs due pursuant to the judgment.

     Vergiette commenced the present action to recover the unpaid
interests and costs and the 5,000 guilder per day penalty Samara

became obligated to pay by failing to produce the information required by the judgment. Vergiette later amended his complaint to add a claim for further damages he contends are due as a result of Samara's breach of contract. After Samara defaulted, the magistrate judge held a damages hearing and issued a report recommending that I award Vergiette interest and costs on the prior judgment, but deny his requests to recover the 5,000 guilders per day penalty and additional breach of contract damages. The matter is before me on Vergiette's objection to the magistrate judge's report and recommendation.

## I. FACTS

The parties collaborated on several business transactions from 1980 through 1991. On July 22, 1991, they entered into an agreement to terminate their business relationship and allocate compensation for past and pending ventures. In pertinent part, the agreement required Samara to pay Vergiette (1) 100,000 Dutch guilders; (2) an unspecified fee that the agreement describes as "the investment manager's ten percent"; (3) another unspecified fee that the agreement refers to as "ten percent of the dividend earned by the exploration of a sailing vessel known as `Te Vega'"; and (4) 25% of the net profit generated by any sale of Te

2

Vega.  The agreement also contained a clause that allowed Samara to fulfill his obligations under the agreement by paying Vergiette 25% of the profits generated by the sale of a residence referred to in the agreement as "De Bloemert."  Samara subsequently paid Vergiette 10,000 guilders, but otherwise failed to perform his obligations under the agreement.  In January 1992, Samara, under court order, arranged for a bank guarantee to cover the 90,000 guilder balance due under the agreement.

In February 1992, Samara filed suit in the District Court of the Hague seeking to set aside the agreement.  Vergiette filed a cross-action for the 90,000 balance, plus interest.  After Samara defaulted, the court ordered judgment in Vergiette's favor in the amount of 90,000 guilders, plus interest and costs.  The court also ordered Samara to produce information regarding the sale of Te Vega and De Bloemert within eight days of receiving notice of the judgment.  A 5,000 guilder per day penalty was imposed for every day he remained in default beyond the eight day period.[1]  Samara was served with the judgment on April 13, 1993.  He did not provide the information ordered by the court within the eight

---

[1]  Vergiette states in his affidavit that he believes that the penalty would expire after six months.  However, he cites no Dutch authority for this proposition.

3

days or anytime thereafter.  The 90,000 balance was, however, paid out of the bank guaranty.

Thereafter, Vergiette filed suit in this court to enforce the judgment of the Hague court.  He later amended the complaint to assert a claim for additional damages arising from the breach of the July 1991 agreement.  Samara was served with the amended complaint on November 9, 1993.  The clerk entered a default pursuant to Fed. R. Civ. P. 55(a) on December 16, 1993, due to Samara's failure to file a timely pleading or otherwise defend.  The magistrate judge held a hearing on damages on January 25, 1994.

Subsequently, the magistrate judge issued a report and recommendation.  With respect to the first count, he recommended that the penalty provision of the Hague court's judgment not be enforced on the grounds that its punitive nature ran afoul of New Hampshire's strong public policy against punitive damages.  In addition, he recommended that the second count be dismissed on grounds that there was insufficient evidence of the damages suffered by Vergiette in the record and that, in the alternative, Vergiette's claim was barred by res judicata.  The plaintiff filed a timely objection to the magistrate judge's report and recommendation which is now before me.

4

## II. DISCUSSION[2]

Vergiette objects to the magistrate judge's report and recommendation on two grounds. First, he argues that the magistrate judge mischaracterized the nature of the penalty provision, stating that the provision is not punitive but rather necessary to vindicate the authority of the court. Furthermore, he argues that comity is the guiding principle in deciding whether to recognize and enforce foreign judgments, and because there is no public policy in New Hampshire against vindicating the authority of its courts, this court should not follow the magistrate judge's recommendation. Second, Vergiette argues that his breach of agreement claim should not be dismissed because he has produced sufficient evidence to determine damages and because res judicata should not apply. Specifically, he contends that he asserted the claim in the prior proceeding, but was not given a full and fair opportunity to litigate because the defendant failed to appear and produce the requisite information to determine damages. He has also supplemented the record with certified copies of documents purporting to establish the

---

[2] I review de novo those issues specifically objected to by a party in a magistrate judge's report and recommendation. 28 U.S.C.A. § 636(b)(1) (West 1993).

5

purchase and sale of the properties at issue.

**A. Enforcement of the penalty**

While courts are not mandated by the Constitution's Full Faith and Credit Clause to recognize and enforce judgments of foreign countries, principles of comity counsel in favor of recognizing such judgments to the same extent as judgments of sister states.  Restatement of Conflict of Laws (Second) § 98. It is well-settled, however, that while "a final judgment obtained through sound procedures in a foreign country is generally conclusive as to the merits," where enforcement would offend the public policy of the enforcing state, the judgment may not be recognized or enforced.  Ackermann v. Levine, 788 F.2d 830, 837 (2d Cir. 1986).[3]  "A judgment is unenforceable as against public policy to the extent that it is 'repugnant to fundamental notions of what is decent and just in the State where enforcement is sought.'"  Id. at 841 (citations omitted); see also In re Breau, 132 N.H. 351, 359, 565 A.2d 1044, 1049 (1989) (comity consistent with nonrecognition of foreign judgment that

_____

[3]  In addition, a foreign judgment will not be recognized where the rendering court lacks either subject matter jurisdiction or personal jurisdiction, or where the judgment was obtained through fraud.  Ackermann, 788 F.2d at 837.

6

contravenes forum's strong public policy); <u>MacDonald v. Railway</u>, 71 N.H. 448, 457, 52 A. 982 (1902) (foreign law not given effect when contravenes important, established policy of forum). Where a federal court rests jurisdiction on diversity of citizenship, it will look to the law of the state in which it sits to determine whether enforcement offends an established public policy. <u>Sangiovanni Hernandez v. Dominicana de Aviacion</u>, 556 F.2d 611, 614 (1st Cir. 1977).

Vergiette seeks enforcement of a provision of the Hague court's judgment which imposed a penalty on Samara for his failure to comply with that court's order. The imposition of monetary penalties for the failure to comply with a court's order does not conflict with the public policy of New Hampshire. <u>See</u> <u>Kidder v. Kidder</u>, 135 N.H. 609, 612, 609 A.2d 1197, 1199 (1992) (court imposed monthly fine payable by husband to wife until husband complied with court order to produce mortgage document). "[T]he trial court ... has the power to impose a monetary fine for a continued noncompliance with its orders ... and has broad remedial power to impose penalties for contempt." <u>Id.</u> Thus, while this state has long expressed its aversion to punitive damages, <u>see, e.g.</u>, <u>Vratsenes v. N.H. Auto Inc.</u>, 112 N.H. 71, 72, 289 A.2d 66, 67 (1972), it has recognized that punishment for

7

civil contempt that is remedial, coercive, for the benefit of the complainant, and which continues until compliance by the contemptor, is a valid means of enforcing a court's order, Town of Nottingham v. Cedar Waters, Inc., 118 N.H. 282, 285, 385 A.2d 851, 853 (1978); see also Kidder, 135 N.H. at 612.[4]

While I disagree with the magistrate judge's characterization of the penalty provision, I still find that Vergiette's claim to enforce the judgment is fatally flawed. A party seeking to enforce a foreign judgment must show that it is a final judgment "`determining entitlement to money, status or property interests.'" In re Breau, 132 N.H. at 380 (emphasis

---

[4] Although neither Vergiette nor the magistrate judge raised the issue of constitutional limits on such civil contempt sanctions, I note that under United Mine Workers v. Bagwell, 114 S. Ct. 2552 (1994), the penalty imposed in this case does not traverse our constitutional protections. In that case, the Court stated: "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary proceeding upon notice and opportunity to be heard. Neither jury trial nor proof beyond a reasonable doubt is required." United Mine Workers, 114 S. Ct. at 2557.
    Samara received notice of the Hague court judgment and order requiring him to produce certain documents within eight days. Had he produced those documents within that period, he could have avoided the imposition of the penalty. Thus, the penalty imposed by the Hague court was civil in nature and complied with our constitutional requirements by providing notice and an opportunity to be heard to Samara.

added) (citations omitted); see also Restatement of Conflict of Laws (Second) § 101 ("a valid judgment for the payment of money will be enforced in other states only in the amount for which it is enforceable in the state where it is rendered"). Vergiette has not shown that he, rather than the Dutch court, is entitled to the accrued penalty under Dutch law. Thus, I overrule Vergiette's objection to this portion of the magistrate judge's report and recommendation.

## B. The Claim for Additional Damages

Vergiette also objects to the magistrate judge's recommendation that his breach of contract claim is barred by res judicata.[5] Specifically, he contends that while the present claim is for breach of the agreement, the prior claim asserted in the Hague court was merely to recover a liquidated damages amount. Any claim that he had for breach of the agreement, Vergiette argues, did not proceed to judgment in the Hague proceeding evidenced by that court's order for Samara to produce certain documents to determine the actual value of the damages suffered by Vergiette. In support of this claim, Vergiette also

---

[5] Vergiette also produced additional evidence to show damages. I do not address this issue because I find that it may be moot if res judicata is applicable.

9

provides a letter from a colleague of his Dutch attorney stating in pertinent part that his attorney "made an explicit reservation to demand other damages later in the procedure...[and] [d]ue to the non-pleading from the plaintiff [Samaha] the demand wasn't extended to other damages."

Vergiette's objection to the magistrate judge's recommended disposition of his breach of agreement claim hinges on his assertion that res judicata principles are inapplicable here because the Dutch court allowed him to split his claim for the 90,000 guilders from any potential claim for additional damages that might have resulted from Samara's breach of the agreement. In other words, Vergiette argues that this court should not construe the Dutch court's 90,000 guilders judgment to preclude a subsequent breach of contract claim for additional damages because the Dutch court itself would not preclude him from bringing such a claim. I agree that res judicata would not bar his breach of contract claim if the Dutch court itself would allow him to bring such a claim. <u>See</u> Restatement of Conflict of Law (Second) § 95 ("what issues are determined by a valid judgment is determined, subject to constitutional limitations, by the local law of the state where the judgment was rendered"); <u>see also</u> <u>General Foods Corp. v. Dept. of Public Health</u>, 648 F.2d 784,

10

786 (1st Cir. 1981) (law of state where judgment is rendered determines persons bound by prior judgment); MacDonald, 71 N.H. at 451. However, I cannot determine from the pleadings that a Dutch court would treat Vergiette's breach of agreement claim in the manner he describes. Thus, I overrule Vergiette's objection to the magistrate judge's recommendation that judgment be entered for the defendant on Vergiette's breach of contract claim.

## C. Proof of Foreign Law

Federal Rule of Civil Procedure 44.1 provides the procedure for determining foreign law in federal court. Pursuant to that rule, I may require that the party seeking to rely on foreign law give a complete presentation of that law to the court. Fed. R. Civ. P. 44.1 notes of advisory committee on rules. Thus, Vergiette may renew his claim for the penalty amount and his breach of agreement claim within thirty (30) days if properly supported by treatises, statutes, cases, and/or expert testimony as to Dutch law regarding these issues. See Fed. R. Civ. P. 44.1 notes of advisory committee on rules ("[T]he court is free to insist on a complete presentation by counsel [of the foreign law relied on by the parties].").

11

### III. CONCLUSION

For the foregoing reasons, I reject Vergiette's objections to the magistrate judge's report and recommendation (document nos. 10 and 12) without prejudice.  The plaintiff may renew his objections within thirty (30) days with sufficient proof of the Dutch law on the issues discussed above.  If Vergiette fails to make a timely submission, the clerk shall enter judgment for Vergiette in accordance with this order and the magistrate judge's report and recommendation.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

February 15, 1995

cc:  Warren C. Nighswander, Esq.

12